WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charlotte Winans,<br><br>                        Plaintiff,<br><br>          v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                        Defendant. | No. CV-13-00613-TUC-BPV<br><br>**ORDER** |

Plaintiff, Charlotte Winans, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff presents three issues on appeal: (1) whether the Administrative Law Judge (ALJ) properly evaluated the absence of diffuse muscle atrophy, muscle wasting, and weight loss; (2) whether substantial evidence supports the ALJ's evaluation of treating physician Dr. Sampson's opinions; and (3) whether substantial evidence supports the ALJ's finding that Plaintiff was not credible. (Doc. 13.) Before the court is an opening brief filed by Plaintiff (Doc. 13), the Commissioner's opposition (Doc. 14), and Plaintiff's reply (Doc. 15).

The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties. (Doc. 9, 10.)

The Defendant's decision denying benefits is reversed and remanded for further proceedings consistent with this order.

## I.    Procedural History

Plaintiff filed an application for Disability Insurance Benefits (DIB) in December 2010, alleging disability as of December 2006 due to neck and back pain, and numbness in her hands and arms. Transcript/Administrative Record (Tr.) 153-56, 173. The application was denied initially and on reconsideration. Tr. 77, 88, 99-102, 104-106. Plaintiff appeared with counsel and testified before an ALJ at an administrative hearing. Tr. 29-76. On May 30, 2012 the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 4-14. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 19-21. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1)

## II.    The Record on Appeal

### a.    Plaintiff's Background and Statements in the Record

Plaintiff was 47 years of age on the December 13, 2006 alleged disability onset date, and 52 years of age on her date late insured, December 31, 2011. Tr. 153, 169. Plaintiff has a high school education and worked in the recent past as a cashier/stocker, construction worker, and as a house cleaner. Tr. 59, 173-74.

Plaintiff testified at a hearing before the ALJ on April 26, 2012 that she has had a limp for the last two years because she started getting numbness in her leg about four years prior to the hearing. Tr. 33. Plaintiff wore wrist braces to the hearing, and stated she had been wearing them "off and on" for two to three years. Tr. 34. Plaintiff testified that in December 2006, she would not have had trouble walking because she had a little bit of back pain, but no leg pain. Tr. 36-37. She would have been able to stand about 20 minutes before sitting down, and then she could sit for about 15 to 20 minutes. Tr. 37. Plaintiff testified that she thought that in December 2006 she would have been able to lift 15 to 20 pound with her right arm and probably 10 pounds with her left arm. Tr. 37.

At the time of the hearing, Plaintiff thought she could walk maybe five to 10 minutes before her pain caused her to stop and rest for probably 10 minutes. Tr. 38.

Plaintiff thought she probably couldn't stand more than 10 minutes before she would have to sit down. Tr. 38. She could sit for about 15 or 20 minutes as long as she kept shifting her weight from side to side. Tr. 38-39. Plaintiff thought she could currently lift three or four pounds in her right arm, and that she didn't lift anything with her left arm. Tr. 39. Plaintiff clarified that she has always carried things with her right arm, and uses her left arm to assist because she doesn't "have that much strength in [her] left hand." Tr. 40. Plaintiff stated that since her onset date her problems have gotten a lot worse because she is losing feeling in her legs, her hands, and her feet due to nerve damage. Tr. 41.

Plaintiff testified that the numbness or weakness in her hands affects her ability to use her hands around the house, for instance, she can't open a jar, can't write or use a computer for more than five minutes because of numbness and pain in her hands, and has difficulty feeling objects. Tr. 44-46. Plaintiff explained that when she hurt her back at work in 2005 or 2006 and was sent to a workman's compensation doctor, he suggested that nerve conduction studies be performed, but workman's compensation denied the study. Tr. 48-49. Plaintiff stated that the only test they did perform was for carpal tunnel, and those tests were negative. Tr. 49.

Plaintiff also has numbness in her right leg, and, on a scale of zero to 10, most days she would rate her pain a nine. Tr. 52-53.

Plaintiff had been seeing her current physician, Dr. Matthew Sampson, for a little over a year. Tr. 43. Plaintiff lost her insurance in 2006, and paid out of pocket for her visits until she got insurance in August, 2011. Tr. 44, 50. She didn't see him any more often after she got insurance because her insurance considered her back condition to be pre-existing, and wouldn't cover it. Tr. 44.

Plaintiff's medical condition affects the things she does at home, for instance, she can't clean the house very much, can't stand to cook, and as a result of the medications she takes for her conditions, lorazepam, hydrocodone, and Soma, she has to lie down during the day and sleep for a couple of hours. Tr. 53-54. Sitting in a chair causes her leg

1    to go numb. Tr. 54. Nothing Plaintiff has tried, including physical therapy, medications,

2    and steroid injections, has provided any long-term pain relief. Tr. 54.

3        Plaintiff testified that she also has anxiety, which causes her to cry a lot, lose

4    patience, and avoid people. Tr. 55. She also has zero tolerance for stress because of her

5    anxiety and her pain. Tr. 56.

6        A vocational expert (VE) testified that Plaintiff's past relevant work in

7    construction was a heavy position; her work as cashier/stocker was a heavy, semiskilled

8    position with an SVP of 4, and her work as a barista[1] was a medium, semi-skilled

9    position with an SVP of 3 or 4. Tr. 62-65. The VE testified that a hypothetical individual

10   would not be able to perform Plaintiff's past relevant work when the ALJ posed the

11   following hypothetical limitations: Light level work with no use of ladders, ropes or

12   scaffolds, but no limits in stooping. Limited to frequent use of ramps and stairs, and

13   frequent kneeling, crouching, crawling, reaching, handling, fingering and feeling.

14   Avoidance of exposure to unprotected heights or dangerous machinery. Cannot perform

15   tasks in a fast paced environment. Can attend and concentrate for two hours, then needs a

16   10 to 15 minute break, and can then attend for two more hours followed by a lunch break,

17   with a similar afternoon schedule. Tr. 66-67.

18       The VE testified that the same hypothetical individual with the very same

19   functional restrictions, with the same age, vocational and educational background, as well

20   as some further education on manicures, could perform jobs in the national or regional

21   economies, specifically sales attendant in a self-service store, which is a light unskilled

22   job, with an SVP of 2, and requires frequently reaching, handling, and occasional

23   fingering. Tr. 67-68. The VE also found that the individual could perform the job of

24   cashier, a light unskilled job with an SVP of 2, and as a storage facility rental clerk, a

25

26

27   [1] Because the Dictionary of Occupational Titles (DOT) did not include a job
     description for barista (Plaintiff worked at a Starbucks coffee shop), the VE rejected the
28   DOT's classification for coffee maker, an unskilled position, which both the VE and ALJ
     agreed did not appropriately classify the position as performed. Tr. 63-65.

- 4 -

light unskilled job with an SVP of 2 which requires frequent reaching, handling, and no fingering. Tr. 68-69.

The VE explained that if any individual cannot attend for up to two hours at a time, it would eliminate employment. Tr. 69-70. The VE agreed that if any individual is unable to tolerate routine work stress, so they are not working at a competitive speed, they could not work. Tr. 103.

The VE also testified that an individual would be precluded from performing the jobs she had identified if the individual was precluded from crouching, kneeling, squatting, reaching above shoulder level, and working with arms in front, as well as avoiding pinching, fine movements, feeling, and touching. Tr. 73. Additionally, the VE agreed that if the individual was limited to sitting or standing for 15 minute blocks of time, and then had to lie down, that would also preclude all the jobs the VE had identified. Tr. 74. If the individual had to avoid people when she's in pain, so that she would need to be totally absent from co-workers, supervisors, or the public more than two days a month, that would also preclude all the jobs identified by the VE. Tr. 74. The VE also testified that an inability to lift even seven pounds would preclude the identified jobs. Tr. 74-75.

### b. Relevant Medical Evidence Before the ALJ

#### i. Treating Sources

In January 2005, MRI of Plaintiff's lumbar spine revealed several abnormalities, including spondylosis with broad based disc bulge and left paracentral protrusion with slight indentation of the left ventral thecal sac at L2-3; spondylosis with broad based disc bulge protrusion, contacting the S1 nerve root bilaterally without displacement at L5-S1; and mild to moderate degenerative changes at L4-5 and L5-S1. Tr. 277-78.

Plaintiff was seen by Dr. Michael Fairfax, a rheumatologist, in January 2006, for complaints of diffuse musculoskeletal pain, polyarthralgias, and myalgias, fatigue and non-restorative sleep. Tr. 296. The last treatment note from Dr. Fairfax in May 2006 assessed Plaintiff with probable fibromyalgia, chronic insomnia, and probable carpal

tunnel syndrome, and recommended treatment with Vicodin, Flexeril, and recommended nerve conduction studies to further assess the carpal tunnel syndrome, and nocturnal splints. Tr. 294.

Plaintiff was seen for a total of seven physical therapy visits from June to July 2006. Tr. 268. Plaintiff reported slow but gradual reduction in hand and arm soreness, as well as reporting on her last visit moderate gains in her strength on her arms, hand, and wrist regions, although this was accompanied by mild additional cervical spine and arm soreness. Tr. 268. Plaintiff was discharged to a home stretching and strengthening exercise program. Tr. 268.

In August 2006, Plaintiff saw Dr. Paul Saiz for her back and neck pain (Tr. 279). On examination, Dr. Saiz found the following: normal gait and coordination; normal posture and balance; no pain with range of motion except on one side of Plaintiff's neck; no tenderness on palpation; free movement in Plaintiff's hips, knees, ankles, shoulders, elbows, wrists, and hands; full strength (5/5) in Plaintiff's lower extremities; and full strength (5/5) in Plaintiff's upper extremities. Tr. 279. Dr. Saiz noted that x-rays showed Plaintiff had cervical spondylosis at multiple levels, minimal degenerative disc disease at C7-T1, facet arthropathy and a bone spur at C5, in addition to decreased neck curvature. Tr. 279.

In September 2006, MRI of the cervical spine showed mild multilevel degenerative disc disease and posterior spondyloarthropathy; mild right foraminal narrowing at C4-5; and mild left foraminal narrowing at C6-7. Tr. 282.

Plaintiff saw her new primary care physician Dr. Matthew Sampson for treatment of her seasonal allergies in August 2010. Tr. 319. Plaintiff reported to Dr. Sampson in February 2011 that she had tingling and numbness, and Dr. Sampson assessed Plaintiff with paresthesia and prescribed lorazepam. Tr. 318. In November 2011, Plaintiff was seen by Dr. Sampson for low back pain. Tr. 326. On examination, Dr. Sampson found normal spine curvature, no vertebral spine tenderness, normal gait, symmetrical reflexes, and no tenderness of the SI (sacroiliac) joints. Tr. 326. Dr. Sampson did observe

moderate paraspinal spasm, and decreased sensation. *Id*. Dr. Sampson diagnosed low back pain and, in addition to refilling her current lorazepam prescription, prescribed a pain medication and a muscle relaxer.

In March 2012, treating physician Dr. Sampson opined that Plaintiff could not perform part-time or full-time work at any exertional level. Tr. 324. He also reported that Plaintiff should avoid reaching, pinching with the thumb and index finger, performing fine movement, including typing and small assembly, and feeling or touching where sensation was required, but could occasionally power grip with her hands. Tr. 325.

In April 2012, Dr. Sampson provided a narrative report in which he stated that he had access to Plaintiff's prior medical records and studies; Plaintiff had been unable to afford treatment and had been denied insurance coverage for her pre-existing cervical spine condition. Tr. 329. Dr. Sampson explained that, due to her cervical radiculopathy resulting in numbness and weakness in her hands, Plaintiff could not use her hands to reach, handle, finger, and feel two-thirds of the workday. Tr. 329. Plaintiff could not "stand for six to eight hours because she has a documented lumbar radiculopathy with decreased sensation in her legs and ongoing paraspinal muscle spasm as noted in my clinical examinations." Tr. 329. Dr. Sampson maintained that Plaintiff's "anxiety and chronic pain would interfere with her ability to concentrate in a work environment" and that she could not "sustain concentration for two hour periods of time." Tr. 329. He concluded that Plaintiff had "multiple legitimate medical bases for pain and despite multiple interventions, such as physical therapy, epidural steroid injections, and medications, remains significantly limited by her pain." Tr. 329.

*ii.   Examining Sources*

In March 2011, Dr. Palmer performed a consultative examination for the State agency. Tr. 298-304. On examination, Dr. Palmer observed subjective pain in the active range of motion of Plaintiff's neck, overhead movements of the right and left upper extremity, and low back pain in all measured movements. Tr. 300. Dr. Palmer also noted normal strength in her upper and lower extremities; subjectively diminished sensation in

the right and left hands; diminished sensation in the left leg; minor imbalance with toe, heel, and tandem walking; and no gait or postural abnormality. Tr. 300. Dr. Palmer diagnosed Plaintiff with cervical spondylosis, neck pain with symptoms of upper extremity radiculopathy bilaterally, lumbar spondylosis, low back pain, symptoms of sciatica bilateral lower extremities. Tr. 302. Dr. Palmer opined, among other things, that Plaintiff could lift and carry twenty pounds occasionally; lift and carry ten pounds frequently; stand and/or walk six to eight hours per workday; and frequently use her hands to reach, handle, and finger. Tr. 302-03.

c. The ALJ's Findings

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2011. Tr. 6, ¶ 1. The ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 13, 2006 through her date last insured. Tr. 6 ¶ 2. The ALJ found that Plaintiff has the severe impairments of cervical and lumbar radiculopathy and osteoarthritis. Tr. 6, ¶ 3. The ALJ found that Plaintiff's impairments did not meet or equal any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. 6, ¶ 4. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations: she cannot climb ladders, ropes or scaffolds; is unlimited in stooping but is limited to frequently using ramps and stairs, and frequently limited to kneeling, crouching, crawling, handling, reaching, fingering and feeling; must avoid concentrated exposure to unprotected heights and dangerous machinery; cannot perform tasks in a fast-paced production environment; and can attend and concentrate for two hours then must take a break, then can attend and concentrate for 2 more hours and then take a lunch break, and then can attend for two more hours with another 10 to 15 minute break. Tr. 7, ¶ 5.  The ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 12, ¶ 6. The ALJ further found that considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can

perform and concluded that Plaintiff was not under a disability from October 1, 2006 through the date of the ALJ's decision. Tr. 12-14, ¶¶ 7-11.

### III.   Discussion

#### a.   Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence*." Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). " 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins,* 466 F.3d at 882). The Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, --- F.3d ---, 2014 WL 3397218, *11 (9th Cir. July 14, 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his RFC precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. § 404.1520(a).

b.  Analysis

i.  *The ALJ did not properly evaluate the absence of diffuse muscle atrophy, muscle wasting and weight loss.*

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because in making the RFC determination, the ALJ improperly relied on his own lay medical judgment about muscle wasting, muscle atrophy, and weight loss. (Doc. 13, at 7-8.) The Commissioner admits that while the ALJ's observations "could have been placed in better context in the decision," the observation was consistent with the fact that several physicians observed that Plaintiff had no muscle weakness, and given the weight of the evidence that supports the ALJ's decision, the Plaintiff's argument holds little merit. (Doc. 14, at 12)

The ALJ found that "[i]f the claimant was as functionally limited in her lifting and carrying abilities as she claims then the file would probably show evidence of loss of muscle tone or possibly atrophy, but the file does not reflect such evidence." Tr. 11. The ALJ further stated that:

> [t]wo common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse muscle wasting or atrophy. There is no record of the claimant having lost weight since the alleged onset date. There is also no record regarding diffuse muscle atrophy or muscle wasting. It can be inferred that, although the claimant undoubtedly experiences some degree of pain, the pain has apparently not altered the use of her muscles and joints to the extent that is has resulted in diffuse muscle atrophy.

Tr. 12.

The ALJ cited no medical opinion or authority to support his lay surmise about the significance of the absence of those findings. *See* Tr. 11-12. Hence, the ALJ made an improper lay medical judgment, and substantial evidence does not support his decision. "[W]hile an [ALJ] is free to resolve issue of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2nd Cir. 1983); *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (1999) (ALJ improperly relied on his interpretation of Plaintiff's testimony over medical opinions); *Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician...."). The ALJ's finding in this case regarding muscle atrophy and weight loss was based on the ALJ's own lay interpretation of Plaintiff's treatment records, and undoubtedly a medical diagnosis by a lay witness does not constitute competent evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.  1996) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("It would appear from this paragraph that the ALJ made his own medical conclusions about whether a patient would show signs of atrophy or muscle tone loss as a result of Frank's alleged impairments"). The impact of the ALJ's improper reliance on his own observations[2] and lay interpretation of the medical significance of the absence of weight loss, diffuse muscle wasting and muscle atrophy is not lessened by the medical evidence that Plaintiff's physicians reported no muscle weakness.[3]

The ALJ's error was harmful given the ALJ's repeated and heavy reliance on his lay medical judgment in both his determination of the weight to be given Dr. Sampson's opinion, and in making a determination of Plaintiff's credibility. *See* Tr. 11-12 & n.1.

>                    ii.   *The ALJ's evaluation of treating physician Dr. Sampson is*
>                          *not supported by substantial evidence*

The ALJ acknowledged Dr. Sampson as Plaintiff's treating physician, (Tr. 9), but gave "little or no weight" to his opinions. The Court finds that the ALJ erred in

---

[2] The Court finds the Commissioner's argument that the ALJ's conclusion is supported by the ALJ's own observations that he "did not see any evidence showing loss of muscle tone or even atrophy" in her upper extremities (Tr. 10) both improper and unsound. Without medical training and expertise, in addition to an examination of the Plaintiff in a medical setting, it is unclear how the ALJ is in any position to make such a finding.

[3] It should also go without saying that the absence of any evidence in the record regarding atrophy or wasting is not the same as medical evidence of a lack of atrophy or wasting.

discounting Dr. Sampson's opinion. Plaintiff argues that the ALJ's RFC assessment, credibility finding, or step-five decision is not supported by substantial evidence because the ALJ erroneously evaluated Dr. Sampson's opinions. (Doc. 13 at 9.) The Commissioner responds that the ALJ reasonably discounted Dr. Sampson's opinion. (Doc. 14 at 13.)

There are three types of medical opinions (treating, examining, and nonexamining) and each type is accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"). If a treating doctor's opinion is not contradicted by another doctor (*i.e.*, there are no other opinions from examining or nonexamining sources), it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Ryan*, 528 F.3d at 1198; *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine,* 574 F.3d at 692; *Ryan*, 528 F.3d at 1198; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Specific and legitimate reasons are also required to reject a treating doctor's ultimate conclusions. *Cf. Lester*, 81 F.3d at 830 (citing *Embrey,* 849 F.2d at 422, and

*Murray,* 722 F.2d at 502); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (stating that "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion"). " 'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn*, 495 F.3d at 632 (citing SSR 96-2p at 4, available at 61 Fed.Reg. 34,490, 34,491; 20 C.F.R. §§ 404.1527). Treating source medical opinions are still entitled to deference and, "[i]n many cases, . . . will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray*, 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."). The ALJ rejected Dr. Sampson's opinion for numerous reasons. The Court addresses these reasons below.

As previously noted, the ALJ relied on an improper and unsupported lay medical judgment in rejecting Dr. Sampson's opinions on the grounds that Plaintiff did not have muscle atrophy or wasting.

The ALJ rejected also Dr. Sampson's opinions about Plaintiff's ability to use her upper extremities on the grounds that Dr. Sampson did not "address, much less explain away," Plaintiff's admission that to her knowledge, upper extremity electro-diagnostic (EMG) studies showed normal findings. Tr. 11 (referring to *id*. at 299). Dr. Fairfax had recommended nerve conduction studies to "further assess carpal tunnel syndrome." Tr. 294. Plaintiff, however, has not alleged limitations due to carpal tunnel syndrome. *See* Tr.

173. As Dr. Sampson explained in his medical source statement, the numbness and weakness in Plaintiff's hands is a result of "documented cervical radiculopathy", (Tr. 329), a diagnosis that is supported by the objective evidence including an MRI of Plaintiff's cervical spine indicating abnormal findings. Tr. 282. Dr. Palmer, consistent with Dr. Sampson's opinion, based his conclusion that Plaintiff had cervical spondylosis and neck pain with symptoms of upper extremity radiculopathy bilaterally on abnormal findings as reported by cervical spinal imaging reports. *See* Tr. 302. At the time Dr. Palmer made this diagnosis, he was aware that the EMG studies were reportedly normal. Tr. 301. The ALJ's rejection of Dr. Sampson's opinion that Plaintiff had limitations in the frequent use of her hands based on the evidence suggesting negative test results for carpal tunnel syndrome is not a clear and convincing reason based on substantial evidence in the record in support of his conclusion.

The ALJ speculated that Dr. Sampson's assessments were the result of his sympathy for the Plaintiff and/or a result of Plaintiff's pressure and insistence in demanding such evaluations, characterizing Dr. Sampson as Plaintiff's "sympathetic" physician. *See* Tr. 10. Without any specific findings in support of the ALJ's suggestion that Dr. Sampson was acting out of sympathy for his patient, or at the insistence of his patient, this highly speculative assessment of Dr. Sampson's opinions is inappropriate and troubling, and does not amount to substantial evidence. The ALJ has an obligation to review, with impartiality, the facts of the case before him. This line of speculation raises a concern that the ALJ might be basing his decision on something other than the relevant evidence, and then attempting to justify that result.   The Ninth Circuit has raised a caution about general assertions such as this because, without support in the record, they run "contrary to the deferential rule this court has adopted with respect to treating physicians' opinions." *Rodriguez v. Bowen*, 876 F.2d 759, 762 n.6 (9th Cir. 1989).

The ALJ also rejected the opinion of her "sympathetic physician" because he "evidently assumes everything his patient tells him is true, accurate and correct but there are reasons to believe the claimant magnifies her symptoms." Tr. 10. "An ALJ may reject

a treating physician's opinion if it is based to a *large extent* on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal quotations omitted)(emphasis added)(citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (1997) (affirming the ALJ's rejection of a treating physician's opinion when it was based upon the claimant's self-reports, which the ALJ properly found to be exaggerated and unreliable); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989) (same).

By contrast, in *Ryan*, the Ninth Circuit reversed the ALJ's denial of benefits because the ALJ's rationale for rejecting the examining physician's opinion, that it relied "too heavily on [the claimant's] subjective complaints," did not constitute a clear and convincing reason where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. 528 F.3d at 1199-1200 (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).  Just as the record in *Ryan* did not support the ALJ's conclusion, there is nothing in the record in this case to suggest that Dr. Sampson disbelieved Plaintiff's description of her symptoms, or that Dr. Sampson relied on those descriptions more heavily than his own experience as her treating physician, including having "access to her prior records as well as the diagnostic studies and consultation that have been performed over the years" in reaching the conclusion that Plaintiff had limitations that precluded her from frequently using her hands and arms for reaching, handling, fingering and feeling based on "documented cervical radiculopathy" and the inability to stand for six to eight hours due to a "documented lumbar radiculopathy with decreased sensation in her legs and ongoing paraspinal muscle spasm as noted in [Dr. Sampson's] clinical examinations."  *Cf. Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (substantial evidence did not support ALJ's finding that examining psychologists took claimant's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive"). Unlike the ALJ's decisions in *Morgan* and *Tommasetti*, the ALJ here did not provide clear and convincing reasons regarding how and to what degree, Dr.

Sampson's opinion was based on Plaintiff's subjective complaints. *Morgan*, 169 F.3d at 600; *Tommasetti*, 533 F.3d at 1041.

The Court does find that the ALJ's reasons for rejecting Dr. Sampson's assessment in March 2012, (Tr. 587-88), in which Dr. Sampson opined during a regular workday she could stand for "0" minutes, sit for "0" minutes, and walk for "0" minutes was inconsistent with examination findings, and "departe[ed] substantially" from the rest of the evidence of record (Tr. 10) and was "implausible on its face" (Tr. 11). In fact, the Plaintiff's own statements contradicted this assessment. (*See* Tr. 186) (Plaintiff can "walk around the block" and feels "fine unless [her] back starts hurting."). Plaintiff also testified that, at the time of hearing, she could walk maybe five to 10 minutes before her pain caused her to stop and rest for probably 10 minutes. Tr. 38. The ALJ reasonably relied on the extreme limitations expressed in Dr. Sampson's opinion in contrast to the evidence in the record and the ALJ's personal observations ("If she were as disabled as [Dr. Sampson] states, then she would be using a wheel chair or be in a hospital") to reject this opinion.

Furthermore, to the extent Dr. Sampson opined that he believed Plaintiff could not sustain concentration for two-hour periods of time due to pain and anxiety, the ALJ accounted for limitations in Plaintiff's ability to concentrate in his RFC analysis by limiting her concentration to two-hour periods during the workday. Tr. 7.

Accordingly, the Court concludes that the ALJ's rejection of Dr. Sampson's opinion of April 26, 2012 as to Plaintiff's ability to use her hands and to stand for six to eight hours a day is not supported by substantial evidence in the record. The Court further finds that the ALJ appropriately accounted for limitations found by Dr. Sampson in the April 2012 medical source statement concerning Plaintiff's ability to concentrate. Finally, the Court finds that the ALJ's rejection of Dr. Sampson's medical opinion on the ultimate issue of disability in his March 2012 assessment was supported by substantial evidence.

*iii.   The ALJ's credibility finding is not supported by substantial evidence.*

"[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks and citation omitted); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). Plaintiff argues that the ALJ erred in Plaintiff's credibility determination. (Doc. 13 at 16-20.) Plaintiff testified that in December 2006 she did not have trouble walking, could stand for about 20 minutes, sit for about 15 to 20 minutes, and lift 15 to 20 pounds with her right arm and 10 pounds with her left arm. Tr. 36-37. At the time of the hearing, she could walk for only five to 10 minutes, couldn't stand for more than 10 minutes, and could sit for about 15 to 20 minutes. Tr. 38. She thought she could lift three or four pounds in her right arm, and didn't use her left arm to lift, although she clarified that she uses her left arm to assist in lifting. Tr. 39-40. Plaintiff also testified that the numbness and weakness in her hands affects her ability to use her hands, and she can't open a jar, write or use a computer for more than five minutes, and has difficulty feeling objects. Tr. 44-46. Plaintiff also has numbness and pain in her right leg. Tr. 52-53.

When assessing a claimant's credibility, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn,* 495 F.3d at 635 (internal quotation marks and citation omitted). Additionally, the ALJ may disregard self-serving statements if they are unsupported by objective evidence. *Rashad v. Sullivan*, 903 F.2d 1229, 1231. Where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering by the ALJ, the ALJ's reasons for rejecting the claimant's symptom testimony must be specific, clear and convincing. *Garrison,* 2014 WL 3397218, *16; *Tommasetti*, 533 F.3d  at 1039; *Orn,* 495 F.3d at 635*; Robbins,* 466 F.3d at 883. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273,

1284 (9th Cir. 1996); *see also Orn,* 495 F.3d at 635 (the ALJ must provide specific and cogent reasons for the disbelief and cite the reasons why the testimony is unpersuasive).

In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record; observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Lingenfelter*, 504 F.3d 1028 at 1040; *Smolen,* 80 F.3d at 1284.  *See also Robbins,* 466 F.3d at 884 ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), on conflicts between his testimony and his own conduct; or on internal contradictions in that testimony.")

An ALJ's error may be harmless where the ALJ has provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. *See Bray,*554 F.3d at 1227; *Carmickle v. Comm'r Social Sec. Admin,* 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004). In this context, an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197; *see also Carmickle*, 533 F.3d at 1162.

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 7. As the Seventh Circuit Court of Appeals explains, the manner in which this "boilerplate language" is used in the Commissioner's credibility analysis "gets things backwards." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Addressing identical language and

finding that the "problem is that the assessment of a claimant's ability to work will often … depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.")

As the Court found in *Bjornson*, the statement by the ALJ that Plaintiff's statements were "not entirely credible" yields no clue to what weight the ALJ gave that testimony, and "fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Id.* (citations omitted).

If, however, "the ALJ has made specific findings justifying a decision to disbelieve an allegation … and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan*, 169 F.3d at 600. Several courts in this Circuit have found that the mere use of the meaningless boilerplate language is not cause for remand if the ALJ's conclusion is followed by sufficient reasoning. *See e.g. Jones v. Comm. of Soc. Sec.*, 2012 WL 6184941, at * 4 (D.Or. 2012)(boilerplate language is a conclusion which may be affirmed if the ALJ's stated reasons for rejecting the plaintiff's testimony are clear and convincing); *Bowers v. Astrue*, 2012 WL 2401642, at *9 (D.Or. 2012)(concluding that this language erroneously reverses the analysis, but finding such error harmless because the ALJ cited other clear and convincing reasons for rejecting the claimant's testimony). The Court adopts this reasoning, and, despite the use of the boilerplate language which implies improper analysis, considers whether the ALJ's conclusion in this case is nonetheless supported by clear and convincing evidence. The Court concludes that it is not.

The ALJ found Plaintiff's testimony not credible for numerous reasons: Medical records and observations of Plaintiff demonstrated no muscle atrophy, loss of muscle tone, or weight loss (Tr. 10-12); Plaintiff's allegations exceed the limitations expected from objective medical findings or are contradicted by or inconsistent with the medical evidence (Tr. 7, 11); Plaintiff exaggerates her symptoms and limitations (Tr. 10); Plaintiff

failed to seek treatment or was noncompliant with treatment (Tr. 11-12); and upon close questioning at the hearing Plaintiff revised her testimony and seemed evasive (Tr. 11.).

As previously noted, the ALJ relied on an improper and unsupported lay medical judgment in finding Plaintiff not credible on the grounds that Plaintiff did not have muscle atrophy or wasting (Tr. 10-12).

The ALJ stated that Plaintiffs allegations exceed the limitations reasonably expected from the medical findings, specifically the treating physician's characterization of her impairments as "minimal", "mild", "slight", "normal", and unremarkable", with reference to clinical and laboratory findings, which, the ALJ concluded is "disproportionate to the severity of pain the claimant has alleged." Tr. 7-8. The ALJ also considered as inconsistent with Plaintiff's allegations that the imaging reports did not indicate more severe injury such as vertebral displacement, fracture or spondylolisthesis. The ALJ may not discredit Plaintiff's allegations of pain solely on the ground that the allegations are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 345, 347-48 (9th Cir. 1991) (declining to conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence.) The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *Burch v Barnhart*, 400 F.3d 676, 680 (9th Cir 2005)(citing SSR 96-7p (1996)). With one exception, noted below, the ALJ's finding lacks the requisite specificity necessary to support the ALJ's finding and mischaracterizes the evidence, which noted mild to moderate degenerative changes, and ignores the medical evidence of spondylosis and disc bulging which the reviewing physician did not characterize as minimal or mild because the physician did not classify this finding by degree at all. Tr. 277-78. The ALJ did note, with the required specificity and supported by substantial evidence in the record, that the objective evidence, indicating full or nearly full strength in her extremities, (*see* Tr. 11, citing *id*. at 300, 318) is inconsistent with the Plaintiff's testimony.

The ALJ characterized Plaintiff's testimony at the hearing, and the appearance with bilateral wrist braces as inconsistent with reports regarding the use of wrist braces. Tr. 10. According to the ALJ, it was inconsistent for Plaintiff to allege intermittent use of bilateral wrist braces and yet have appeared at Dr. Palmer's examination with only one brace. *Id*. To the contrary, a report of intermittent use of bilateral braces is not a report of everyday use of such braces. The ALJ's conclusion is not supported by substantial evidence.

The ALJ observed that Plaintiff's statement that she had been limping slightly for two years (Tr. 33) was inconsistent with Dr. Palmers single observation of a normal gait in March 2011. Tr. 10. This observation is supported by substantial evidence in the record, including Dr. Palmer's observation cited by the ALJ (Tr. 300), and additionally, Dr. Sampson's observation of normal gait in his November 2011 examination (Tr. 326).

Plaintiff asserts that the ALJ unreasonably determined that Plaintiff's testimony in her 2012 hearing testimony regarding the use of her left arm was undermined because she "seemed evasive" and "revised her testimony only after close questioning about her implausible claim that she does not use her left hand." Tr. 11 & n.1. Plaintiff testified at the 2012 hearing that, in 2006, she could lift and carry maybe ten pounds with her left hand. Tr. 37. In response to the ALJ's inquiry about her ability to lift and carry with her left hand at the time of the 2012 hearing, Plaintiff stated she did not "lift or carry anything" with her left hand. Tr. 39. When asked if that meant that the "answer was zero?" Plaintiff replied: "Probably." Plaintiff clarified that she was right-handed and that she used her left hand to assist, *i.e.*, to help. Tr. 39-40. The ALJ asked Plaintiff to explain when her ability to use her left hand had diminished. Tr. 40. She answered, "I guess I can lift with my left arm. I don't know." Tr. 40. She explained that she usually used her right hand to pick something up and her left hand to "brace." Tr. 40. She said that if she used her left hand, she could probably lift and carry ten pounds. Tr. 39-40. Plaintiff asserts that there was no contradiction or evasion, and suggests that the ALJ's finding is undermined by his literalism. (Doc. 13 at 18)(citing *Mendez v. Barnhart*, 439 F.3d 360,

363 (7th Cir. 2006) ("The [ALJ's] finding that Mendez was not 'particularly credible' whatever exactly that means, is undermined by his literalism. When a person says that she sleeps all day, she doesn't mean it literally; she means that she is abnormally sleepy and listless and dozes off frequently.")). The ALJ's observation that Plaintiff seemed evasive during this questioning is an observation within his purview to determine. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in testimony). Additionally, even after Plaintiff explained that she *usually* didn't lift with her left arm, but used it to assist, she agreed that the most weight she *could* probably lift in her left arm without hurting herself was "probably" zero (Tr. 39), and this statement was directly contradicted upon further questioning when she stated that she could lift "probably 10 pounds" with her left arm (Tr. 40-41). Accordingly, the Court finds that the ALJ's rejection of Plaintiff's testimony regarding the amount of weight Plaintiff can lift with her left arm is supported by substantial evidence and the ALJ's proper application of ordinary techniques of credibility evaluation.

The ALJ noted that, in reviewing the record as a whole, "there are a number of inconsistencies contained therein which cast doubt regarding the credibility of the claimant's testimony." Tr. 8. First, the ALJ notes that Plaintiff's treatment notes indicates she suffered from shoulder and neck pain, cervical spondylosis, and cervical degenerative disc disease in 2006. *Id*. Then, in 2011, Plaintiff was prescribed lorazepam and the claimant admitted it was helping, and exhibited tingling, numbness, limited paresthesia in her hands and neck, and normal range of motion of the spine. Tr. 8. It is not evident why the ALJ believed this to be an inconsistent statement, nor does Plaintiff's admission that prescription medications were helping indicate that she was no longer symptomatic at all.

Next, the ALJ considered the lack of evidence from Palmer Family Medicine, and found that the Plaintiff had little or no evidence of recent medical issues nor impairments. Tr. 8. Later in the opinion, the ALJ also noted that "the record reflects that there are large

gaps of time between visits to the doctor … seeking relief from the pain and other symptoms", was no longer receiving any form of physical therapy for pain, or was ever prescribed or received physical therapy for pain, an observation the ALJ believed was "unusual given the nature of the complaint." Tr. 11-12. In assessing a claimant's credibility, the ALJ "may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d 1273, 1284 (9th Cir.1996)); *Fair*, 885 F.2d at 603; *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ, however, failed to consider Plaintiff's treatment in light of her uncontradicted testimony that she could not afford medical treatment and that when she reacquired medical insurance, it excluded pre-existing conditions. Tr. 44. While "[i]n some circumstances, a failure to seek treatment or a failure to follow a prescribed treatment is properly used as evidence supporting a conclusion that the claimant is not credible in describing his or her symptoms … '[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.' " *Orn*, 495 F.3d at 637-398 (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). Thus, the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the medical record establishes that the claimant could not afford it." *Regennitter,* 166 F.3d at 1297. Here, Plaintiff explained that she had no insurance, could not afford treatment, and once she obtained insurance was denied coverage for her cervical condition on a pre-existing condition exclusion. Dr. Sampson's April 2012 narrative confirmed that Plaintiff lacked medical insurance until Fall 2011, and then was denied coverage for cervical spine treatment. Tr. 329. The ALJ did not suggest that this was not believable.

As to the ALJ's statement that Plaintiff had never been prescribed physical therapy, this conclusion is simply mistaken. The record includes records of Plaintiff's physical therapy in 2006, and her discharge to continue her treatment at home. In fact the ALJ acknowledged that Plaintiff had undergone physical therapy "with only short-term relief." Tr. 9.

The ALJ stated that there are "references in the medical evidence that are indicative of the claimant's non-compliance with the medical regimen specified by his physicians." Tr. 12. The ALJ did not cite to any specific instances in the record in support of this conclusion that Plaintiff's noncompliance does not support the alleged intensity and duration of pain and subjective complaints. *See id*.

In sum, the ALJ provide cited specific and cogent reasons, supported by substantial evidence, for his determination that Plaintiff's testimony that she had been limping slightly for two years, could lift no weight with her left arm, and lacked strength in her extremities, was unpersuasive. The ALJ failed to base his adverse determination with respect to Plaintiff's other pain and symptom testimony on substantial evidence in the record because the evidence he has cited is either incomplete, speculative, ignores other substantial evidence, or is insufficient to support his legal conclusion. Because the ALJ did not rely on substantial evidence to discredit this portion of Plaintiff's testimony, that testimony must be deemed credible. *See Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004).

### IV.    Remedy

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician this Court credits the opinion or testimony as a matter of law. *Lester*, 81 F.3d at 830; *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). The Ninth Circuit has held that a court should remand to an ALJ with instructions to calculate and award benefits where three conditions are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 2014 WL 3397218, *20 (citations and footnote omitted). Even when all conditions of the credit-as-true rule are satisfied, a court should nonetheless remand for further proceedings when "an evaluation of the record as a

whole creates serious doubt that a claimant is, in fact, disabled." *Id*. A district court abuses its discretion, however, by remanding for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *Id*.

After applying the credit-as-true rule to improperly discredited evidence, outstanding issues remain to be resolved before determining that Plaintiff is entitled to benefits. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the April 2012 opinion of Dr. Sampson and for finding portions of Plaintiff's testimony not credible. There is, however, no testimony by the vocational expert that the credited portions of Dr. Sampson's opinion, that Plaintiff could not frequently use her hand and arms for reaching, handling, fingering and feeling, or stand for six to eight hours, if adopted, would preclude past work or any work. Similarly, crediting Plaintiff's testimony as true, insofar as the ALJ did not specifically and properly reject the testimony, establishes that, in December 2006 Plaintiff had no trouble walking, could stand for 20 minutes and sit for 15 to 20 minutes, (notably, there was no statement describing the nature, frequency or duration of breaks Plaintiff required between standing and sitting); by 2012, she could walk for only five to 10 minutes, couldn't stand for more than 10 minutes, and could sit for 15 to 20 minutes (again, no indication of the nature, duration or frequency of breaks she needed between sitting periods), has numbness and weakness in her hands affecting her ability to use her hands, and has difficulty feeling objects in addition to numbness and pain in her right leg.

In cases where the testimony of a vocational expert has failed to address functional limitations as established by improperly discredited evidence, this Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citation omitted). Thus, a remand for further proceedings is appropriate in this case.

//

//

IT IS ORDERED:

1.      Defendant's decision denying benefits is REVERSED.

2.      The case is REMANDED for further proceedings consistent with this order.

3.      The Clerk is directed to enter judgment accordingly.


Dated this 29th day of August, 2014.



_____

Bernardo P. Velasco
United States Magistrate Judge